UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DENISE M. MERRITT,

        Plaintiff,

        - against -                              MEMORANDUM AND ORDER
                                                    06-CV-5548 (RRM) (LB)

NEW YORK CITY TRANSIT AUTHORITY and
MANHATTAN AND BRONX SURFACE
TRANSIT OPERATING AUTHORITY,

        Defendants.
-----------------------------------------------------------X
MAUSKOPF, United States District Judge.

        Plaintiff Denise Merritt brings suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), alleging retaliation, wrongful termination and disparate treatment by the New York City Transit Authority ("NYCTA") and the Manhattan Bronx Surface Transit Operating Authority ("MBSTOA"). Before the Court is Defendants' motion for summary judgment on all claims. For the reasons stated below, Defendants' motion is GRANTED.

## **BACKGROUND**

        The Court presumes the parties' familiarity with the procedural history and factual background of this dispute. The following facts, however, are relevant to the instant motion and are set forth as follows.

        On August 29, 2005, Merritt, an African-American woman, was involved in two verbal altercations with fellow MBSTOA bus operator Alfred Adinolfi. The exchanges stemmed from a hand gesture that Adinolfi directed at Merritt,[1] which Adinolfi claimed was a greeting but which

---

[1] Plaintiff stated that Adinolfi used "his four fingers together meeting his thumb with the back of his hand. While facing me he motions his hand in a back and forth manner." Sharpe Decl. Ex. G.

Merritt found offensive. Adinolfi and Merritt dispute exactly what was said, but each accuses the other of shouting insults and profanities and making physical threats. Merritt also alleges that Adinolfi used racist language.

Both parties submitted complaints to MBSTOA after the incidents. Plaintiff indicated in her complaint that she had also sent a copy of it to the Equal Employment Opportunity Commission (EEOC). Shortly thereafter, however, both parties withdrew their complaints, apparently to avoid management intervention, and Plaintiff admitted that she had not actually forwarded her original complaint to the EEOC.

Despite these letters, MBSTOA proceeded with disciplinary action against both employees, pursuant to the requirements of the governing collective bargaining agreement. Both were charged with "gross misconduct, using inappropriate language, physically threatening another employee, and conduct unbecoming a [Transit Authority] employee that has proven to be detrimental to the operations of the Authority." Adinolfi was also charged with racial harassment. At the initial MBSTOA hearing, the charges against Merritt and Adinolfi were found to be substantiated, both were recommended for termination, and both were suspended without pay. These charges and penalties were sustained at a subsequent hearing, and the parties proceeded to binding arbitration.

On November 4, 2005, the day on which the arbitration was initially scheduled, MBSTOA offered Plaintiff and Adinolfi a 30-day suspension, one-year probation and a final warning that any further violation of a similar nature would, if proven at arbitration, result in dismissal. The offer required each employee to waive back pay and to withdraw any related pending litigation. Adinolfi accepted the offer and returned to work. Plaintiff rejected the offer and proceeded to arbitration.

2

Plaintiff alleges that around this time, a union representative told her that the union and NYCTA management felt that Adinolfi had "suffered enough."

In January 2006, the arbitrator rejected the penalty of dismissal and held that Plaintiff's total time off from her job should be treated as a disciplinary suspension without pay. The arbitrator concluded that although Plaintiff's and Adinolfi's testimony and written statements leave "no doubt" that they violated MBSTOA rules for their behavior, he was unable to determine exactly what happened on August 29, 2005. He did, however, find "no actionable bases for [Merritt's] claims of 'harassment, physical violence, and threats and sexual harassment,'" and indicated that if Merritt experienced a hostile work environment on August 29, 2005, she was a contributor to that environment. Plaintiff returned to work the same month.

After receiving the requisite right-to-sue letter from the EEOC, Plaintiff brought this action pro se. She alleges that Defendants wrongfully terminated her, subjected her to disparate treatment because of her race, color and gender, and retaliated against her for ostensibly notifying the EEOC of the initial incidents.

## DISCUSSION

### I. Legal Standards

Summary judgment is warranted where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. Once a moving party meets its initial burden of demonstrating that no genuine issue of material fact exists, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in their favor." Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001). Conclusory allegations, conjecture,

3

and speculation are insufficient to do so. Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998). Nonetheless, in determining whether genuine issues of fact exist, the Court will "resolve all ambiguities and draw all permissible factual inferences" in the nonmovant's favor. Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004).

Here, Plaintiff is proceeding pro se, and her submissions are not models of clarity.[2] Although a pro se party's submissions are to be liberally construed, a "bald assertion," unsupported by evidence, is nonetheless insufficient to overcome a motion for summary judgment. Carey v. Crezenzi, 923 F.2d 18, 21 (2d Cir. 1991).

In the summary judgment context, courts analyze Title VII claims using the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). After a plaintiff meets her minimal burden of establishing a prima facie case of discrimination, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the employee's treatment. Id. at 802. If the employer meets its burden, the plaintiff must provide evidence that there is a genuine issue of material fact as to whether the stated reasons are a pretext for prohibited discrimination. Schnabel v. Abramson, 232 F.3d 83, 88 (2d Cir. 2000). The ultimate burden of persuading the trier of fact of discrimination "remains at all times with the plaintiff." Tex. Dep't Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

---

[2] Pursuant to the Court's obligations to pro se plaintiffs, the Court reads Merritt's papers liberally and interprets them "to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (citation omitted). The Court thus construes some of the claims that Plaintiff classified as retaliation claims as disparate treatment claims as well.

## II. Wrongful Termination

Merritt fails to establish wrongful termination for the simple reason that she was never terminated. Wrongful termination is actionable upon Plaintiff's showing either that Defendants acted in a way that would "lead a prudent person to believe his tenure has been terminated," or that Defendants intentionally created a work atmosphere so intolerable that Merritt was forced to quit. Chertkova v. Conn. Gen'l Life Ins. Co., 92 F.3d 81, 87-89 (2d Cir. 1996). She shows neither. Although she testified that she was dismissed at her initial hearing, the record shows that she was suspended, not dismissed.[3] In addition, Merritt concedes that she was not terminated, see Pl.'s Memo. in Opp. § IV(2) ("[t]he defendant's adverse employment action was their attempt to terminate the plaintiff." (emphasis added)), and that she remains an MBSTOA employee. See Pl.'s Dep. 5:19-20, Oct. 18, 2007 ("Q: Where are you employed? A: At the Transit Authority."). Plaintiff's claim of wrongful termination has no merit and is dismissed.

## III. Disparate Treatment

Merritt alleges that Defendants discriminated against her by not fully investigating the August 29, 2005 incidents, by disciplining her, and by showing preference to Adinolfi during the investigation and disciplinary action. Each of Merritt's claims fails either to demonstrate that these alleged discriminatory actions occurred under circumstances giving rise to an inference of discrimination or that the rationales advanced by Defendants are pretextual. See Schnabel, 232 F.3d at 88.

---

[3] Indeed, the collective bargaining agreement between Defendants and Merritt's union prohibited Defendants from dismissing her at that early stage.

Plaintiff first alleges that Defendants discriminated against her by failing to fully investigate the August 29 incidents and by favoring Adinolfi to the extent that an investigation was conducted. At best, Merritt argues that if the investigation had been rigorous and neutral, Defendants would have treated Plaintiff more leniently, and Adinolfi more severely. Plaintiff's claims fail for a number of reasons. First, she provides no evidence on which to conclude that a rigorous investigation was not conducted, as she must. See, e.g., Kerzer, 156 F.3d at 400. Nor does she allege how the investigation was deficient or that it was conducted in violation of MBSTOA policy or the collective bargaining agreement between Defendants and Plaintiff's union. To the contrary, it is undisputed that, in substantiating Plaintiff's and Adinolfi's violations of MBSTOA policies, Defendants collected written statements from all available witnesses, and also interviewed Plaintiff and Adinolfi. Second, Merritt had the opportunity to and did pursue the matter further, presenting her case through all available stages of the mandated disciplinary process, including to an impartial arbitrator. Far from revealing a slipshod MBSTOA investigation, however, the arbitrator's own inquiry largely confirmed the investigation's findings. Although the arbitrator was unable to determine precisely what happened on August 29 and settled on a more lenient punishment, he came to a similar conclusion as the investigation after considering the evidence and conducting a hearing: that Plaintiff had contributed to the hostilities and that there was "no doubt" that Plaintiff had violated MBSTOA rules.

More importantly, even if one assumes arguendo that Defendants did not properly investigate the incidents, Merritt provides no basis for a reasonable factfinder to conclude that they did so because of discriminatory animus towards Merritt. Schnabel, 232 F.3d at 88. Plaintiff's argument that discrimination should be inferred because Adinolfi and a number of Defendants'

employees involved in the investigation and disciplinary process are "white" men is not, without more, an adequate argument that there was invidious discrimination here. Plaintiff's assertion that Adinolfi was somehow aided by these individuals during the investigation process is belied by the fact that he too was recommended by these individuals for dismissal and that the disciplinary action included additional charges related to the deeply offensive racist and threatening language that he was alleged to have used.

Plaintiff's claim that Defendants discriminated against her by commencing the disciplinary action is equally unavailing. She fails even to raise an inference that Defendants subjected her to disparate treatment, that is, treated her less favorably than a similarly situated employee outside her protected group. See Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977); Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999). Although leniency in disciplinary matters to members of one race over another can constitute such discriminatory treatment, Woodbury v. N.Y. City Transit Auth., 832 F.2d 764 (2d Cir. 1987); Pilman v. N.Y. City Housing Auth., 94-CV-07655-RMB, 2000 WL 34292929, at *4 (S.D.N.Y. Sept. 26, 2000), that is not the case here. Indeed, the undisputed facts show that Adinolfi and Merritt were treated very much the same; both were interviewed before the penalty was recommended, both were initially recommended for dismissal, both received the same offer of settlement and received it at the same time. Merritt's charge reflected the allegations against her, just as Adinolfi's reflected the allegations - including racial harassment - against him. Any claim that Adinolfi was favored during the disciplinary process is undermined by the fact that both were recommended for termination. The lengthier suspension ultimately suffered by Plaintiff was the result not of discrimination but of Merritt's own decision to forgo the settlement offered to her.

employees involved in the investigation and disciplinary process are "white" men is not, without more, an adequate argument that there was invidious discrimination here. Plaintiff's assertion that Adinolfi was somehow aided by these individuals during the investigation process is belied by the fact that he too was recommended by these individuals for dismissal and that the disciplinary action included additional charges related to the deeply offensive racist and threatening language that he was alleged to have used.

Plaintiff's claim that Defendants discriminated against her by commencing the disciplinary action is equally unavailing. She fails even to raise an inference that Defendants subjected her to disparate treatment, that is, treated her less favorably than a similarly situated employee outside her protected group. See Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977); Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999). Although leniency in disciplinary matters to members of one race over another can constitute such discriminatory treatment, Woodbury v. N.Y. City Transit Auth., 832 F.2d 764 (2d Cir. 1987); Pilman v. N.Y. City Housing Auth., 94-CV-07655-RMB, 2000 WL 34292929, at *4 (S.D.N.Y. Sept. 26, 2000), that is not the case here. Indeed, the undisputed facts show that Adinolfi and Merritt were treated very much the same; both were interviewed before the penalty was recommended, both were initially recommended for dismissal, both received the same offer of settlement and received it at the same time. Merritt's charge reflected the allegations against her, just as Adinolfi's reflected the allegations - including racial harassment - against him. Any claim that Adinolfi was favored during the disciplinary process is undermined by the fact that both were recommended for termination. The lengthier suspension ultimately suffered by Plaintiff was the result not of discrimination but of Merritt's own decision to forgo the settlement offered to her.

Even assuming that Plaintiff makes out a prima facie case here, she fails to demonstrate that the investigation or disciplinary action were pretext for unlawful discrimination. Defendants convincingly argue that they began the investigation as a result of Plaintiff's alleged behavior on August 29, 2005, and began the disciplinary action as a result of the findings of the investigation. Defendants' inquiry revealed to them that Plaintiff was involved in a shouting match with a fellow bus operator. The exchanges took place in front of passengers, were reported to include threats by Merritt herself of bodily harm and to be profanity-laced, and were in clear violation of MBSTOA rules. Further, the disciplinary actions did not begin until after Defendants received reports from witnesses and parties with knowledge of the incident. Moreover, an impartial arbitrator, who, like Merritt, is African-American, substantiated the claims against Merritt after both a hearing and the opportunity to consider the evidence. Given that Merritt does not present evidence that the arbitrator was wrong as a matter of fact, that new evidence arose after the arbitrator's finding or that the arbitrator was biased, the Court finds the impartial arbitrator's finding probative of the absence of discriminatory intent. See, e.g., Collins v. N.Y. City Transit Auth., 305 F.3d 113, 119 (2d Cir. 2002).

Because Plaintiff does not provide evidence from which a reasonable factfinder could conclude that Defendants' rationale for disciplining her was merely pretext, Plaintiff's disparate treatment claim fails. Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998).

### IV. Retaliation

Plaintiff appears to allege four retaliatory acts by Defendants: (1) failing to fully investigate the August 29 incidents; (2) instituting disciplinary action against her; (3) cancelling some of her

overtime; and (4) taking away her responsibility for training new bus operators. For the reasons already articulated above, Merritt's claims based on Defendants' alleged failure to conduct a full investigation and for instituting disciplinary action against her are DISMISSED.[4] For the following reasons, the Court also finds her other retaliation claims without merit.

MBSTOA's alleged cancellation of two hours of overtime is too minor to be actionable. Gentile v. Potter, 509 F. Supp. 2d 221, 239 (E.D.N.Y. 2007). An adverse employment action in the retaliation context must be an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). Title VII does not protect individuals from "minor actions," Gentile, 509 F. Supp. 2d at 239 (citation omitted), or actions that do not injure or harm. Burlington, 548 U.S. at 67. Denial of two hours of overtime pay is a minimal injury unlikely to have dissuaded a reasonable worker from complaining of discrimination. Id. at 68. Further, the denial took place roughly two years after the protected acts and is also thus too far removed in time to support a retaliation claim. See Gentile, 509 F. Supp. 2d at 239.

Plaintiff's loss of her occasional responsibility for training new bus operators is also a flawed basis for a retaliation claim. First, Plaintiff makes no showing that this lost training opportunity is anything other than minor; indeed, it is so insignificant that she herself makes no mention of it in her complaint or moving papers. Second, if anything, this was merely a change in her job responsibilities, not a materially adverse employment action that would have discouraged her from complaining of discrimination. Galabya v. N.Y. City Bd. of Educ., 202 F.3d 636, 640 (2d

---

[4] The distribution and allocation of burdens of proof for Title VII retaliation claims are analyzed using the McDonnell Douglas framework. See Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1038 (2d Cir. 1993).

9

Cir. 2000) ("To be 'materially adverse' a change in working conditions must be more disruptive than ... an alteration of job responsibilities") (citations omitted). Third and finally, Merritt makes no showing that MBSTOA's proffered rationale - that an employee's disciplinary record is a legitimate consideration in selecting trainers[5] - could be pretextual.

## CONCLUSION

For the reasons set forth above, the Court finds that Defendants are entitled to summary judgment on all of Plaintiff's claims. As such, this matter is DISMISSED.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2008

ROSLYNN R. MAUSKOPF
United States District Judge

---

[5] According to Defendants, "the selection of bus operators who 'train' student bus operators includes reviewing the bus operator's overall employment history, which includes, but is not limited to their accident history, discipline record, attendance record, and customer complaints." Plaintiff has not alleged that this statement is not an accurate reflection of MBSTOA policy and practice, or that such a practice is simply a pretext for discrimination.